WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FR 160 LLC, | No. CV-13-08180-PCT-GMS |
| Appellant, | **ORDER** |
| v. | |
| Flagstaff Ranch Golf Club, et al. | |
| Appellees. | |

Pending before this Court are the briefs in FR 160's appeal from the bankruptcy court (Docs. 37, 43) and Flagstaff Ranch Golf Club's cross appeal (Docs. 42, 44).[1] For the reasons set forth below, the appeal is denied, and the cross appeal is dismissed as moot.

## BACKGROUND

FR 160, LLC, owns 50 residential lots and a tract of land in Flagstaff, Arizona. Its largest creditor is the Flagstaff Ranch Golf Club ("Golf Club"). (Docs. 38–41, 44 (collectively "AR") 21–22.) Previous litigation between FR 160 and Golf Club produced a Settlement Agreement under which FR 160 delivered to Golf Club promissory notes totaling $5,310,000, secured by the real property. (*Id.*) In return, Golf Club placed certain golf club memberships in escrow. (AR 23.) FR 160 eventually ceased paying the money it owed to various entities including membership dues to Golf Club, dues to the Flagstaff

---

[1] FR 160 requested oral argument on this motion. (Doc. 9.) The request is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Ranch Property Owners Association ("Owners Association"), and wastewater assessments to the Flagstaff Ranch Mutual Waste Water Company ("Waste Water Company"). (AR 79.) Golf Club sought to foreclose on the deeds of trust, but FR 160 filed a voluntary bankruptcy petition on June 12, 2012. (AR 23, 79.)

The bankruptcy court rejected FR 160's first plan of reorganization in January 2013. FR 160 sought to amend its plan of reorganization and maintain the automatic stay under 11 U.S.C. § 362(a) that prevented Golf Club from foreclosing on the real property. The bankruptcy court agreed to extend the stay but also entered an Adequate Protection Order. (AR 286–87.)

FR 160 filed an amended plan of reorganization on April 1, 2013. (AR 337–77.) On June 18, 2013, the bankruptcy court held a one-day trial, and on June 25 the court rejected the amended plan. (AR 8–19, 434–35.) In doing so, the court made four determinations, all of which are challenged by the parties on appeal and cross appeal. (AR 8–19.) First, the court determined "that a plan can be confirmed under 1129(b)(2)(A)(i) that reinstates a lien release provision even if it terminated prepetition due to default or for that matter maturity of the debt without violating *RadLAX*." (AR 10.) The remaining determinations were all reasons why the plan could not be confirmed. Two of the three involved the requirement for FR 160 to have an impaired accepted class under 11 U.S.C. § 1129(a)(10).

In its second determination, the bankruptcy court found that Owners Association and Waste Water Company, Class 8, should have been included in the general unsecured creditor class, Class 12. (AR 11.) The court found that FR 160 had not met its burden to show how the claims of Owners Association and Waste Water Company are dissimilar from those other creditors. (AR 11–12.) It further concluded that the resulting combined class would not have accepted the plan. (AR 12.)

The bankruptcy court's third determination was that NWRA Ventures I, LLC constituted "an insider, at least for purposes of 1129(a)(10)." (AR 12.) NWRA is the senior secured lender of Investors Mortgage Holdings Financial Corporation ("IMH"),

- 2 -

1    which is the parent company of FR 160. (AR 1003–07.) NWRA approved IMH's annual

2    budget and the annual budget of its subsidiaries including FR 160. (*Id.*) It also approved

3    any variances to those budgets and was therefore involved in the approval of the amended

4    plan at issue here. (*Id.*) The court found it was an insider "based upon the relative control

5    that NWRA has over this plan of reorganization, which I think is the relevant issue, the

6    Debtor argued, hey, NWRA doesn't have any control over the day-to-day operation of

7    the Debtor, and that's undoubtedly true." (AR 12.) It found that NWRA is a non-statutory

8    insider because its dealings with FR 160 were not really arms-length. (AR 12–13.)

9        The bankruptcy court's fourth and final determination was that the plan did not

10   satisfy the absolute priority rule because the new value contribution was *de minimis*. (AR

11   13–14.) IMH planned to provide $500,000 in cash to FR 160 as part of the plan, but the

12   court found that "[m]ost of the money will go to payment of debts owed to NWRA and

13   IMH, and that's really not new capital in the sense of a recapitalization of the Debtor."

14   (*Id.*) The court treated that money as a forgiveness of a debt and did not consider it as

15   new capital. (*Id.*) The bankruptcy court held that "the balance of the funds  . . . are de

16   minimis and, therefore, that this plan does not satisfy the new value corollary to the

17   absolute priority rule." (*Id.*)

18       FR 160 filed a motion seeking permission from this Court to appeal from that

19   ruling, and Golf Club requested that it be allowed to cross appeal if the appeal was

20   granted. (Doc. 2, 8.) This Court granted both the request for appeal and cross appeal.

21   (Doc. 35.) The matter is now fully briefed. (Docs. 37–45.)

## DISCUSSION

### I.    Jurisdiction

24       District courts must accept appeals from final decisions of bankruptcy courts, and

25   they have discretionary authority to accept interlocutory appeals. *In re City of Desert Hot

26   Springs*, 339 F.3d 782, 787 (9th Cir. 2003). This Court explained in its order granting

27   leave to appeal that in this matter it has either mandatory jurisdiction under 28 U.S.C. §

28   158(a)(1), or it accepts discretionary jurisdiction under § 158(a)(3). (Doc. 35.)

## II.       Standard of Review

On appeal, courts review a "bankruptcy court's findings of fact under the clearly erroneous standard and review its conclusions of law de novo." *See In re Johnston*, 21 F.3d 323, 326 (9th Cir. 1994). "The bankruptcy court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." *See United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009).

In general, a bankruptcy court makes a finding of fact when it determines whether claims are substantially similar, *In re Barakat*, 99 F.3d 1520, 1523 (9th Cir. 1996), or the insider status of a third party, *In re Friedman*, 126 B.R. 63, 67 (B.A.P. 9th Cir. 1991). Bankruptcy courts must have discretionary power and broad latitude to weigh the facts before them and the Ninth Circuit has reiterated that whether "a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard." *In re Johnston*, 21 F.3d at 327.

However, when an appeal focuses on a legal issue underlying the bankruptcy court's otherwise factual determination, the legal issue is reviewed *de novo*. *Id.* (addressing whether the law places "any limitation on the separate classification of similar unsecured claims"); *cf. In re Loop 76, LLC*, 465 B.R. 525, 536–41 (B.A.P. 9th Cir. 2012) (addressing whether the law allows the bankruptcy court to consider a third-party source for payment in determining the similarity of claims). Similarly, "whether the bankruptcy court applied the correct legal standard" is a question of law that the courts review *de novo*. *In re Welsh*, 465 B.R. 843, 847 (B.A.P. 9th Cir. 2012) *aff'd*, 711 F.3d 1120 (9th Cir. 2013). Finally, mixed questions, involving both law and fact, are reviewed *de novo*. *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

## III.      Issues on Appeal

A bankruptcy court can only approve a plan if it meets all of the requirements of the Bankruptcy Code. FR 160 appeals three determinations that the bankruptcy court made about why the plan did not meet those requirement and Golf Club cross appeals that the plan should have also been rejected for failing to meet another requirement.

The first two issues on appeal concern the requirement from 11 U.S.C. § 1129(a)(10) that when there are any impaired classes of claims in a plan, at least one impaired class must accept the plan and that class cannot be an insider. The Parties agree that the plan has impaired classes, and therefore, FR 160 needs to show that at least one impaired class accepted its plan and that the accepting class was not an insider.

The first issue is whether FR 160's plan permissibly segregated the impaired claims of Owners Association and Waste Water Company, who rejected the plan, into a separate class from the class of similar unsecured creditors that accepted the plan. The second issue is whether the bankruptcy court properly determined that NWRA was an insider whose acceptance does not satisfy the requirement.

In order to merit a reversal and remand, FR 160 must prevail on one of these first two claims because it needs at least one qualified accepting vote. If it does, then it also must prevail on its third issue, that its plan does not violate the absolute priority rule. Golf Club's cross appeal argues an independent basis upon which the plan could be rejected under *RadLAX* but that only become relevant if FR 160 prevails on its appeal.

## IV.   Classification of Parties

The Bankruptcy Code provides that claims may only be placed together in the same class if they are "substantially similar." 11 U.S.C. § 1122(a). Based on other provisions and purposes of the Code, Courts have implied a corollary edict that "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *In re Barakat*, 99 F.3d at 1526.

The Ninth Circuit has a two-pronged analysis for determining whether claims have been permissibly separated into different classes. *In re Loop 76*, 465 B.R. at 536–37. The trial court should determine (1) whether the claims are substantially similar, and (2) if so, whether there is a business justification for separately classifying them. *Id.* If the claims are not substantially similar, their separate classification is not only permissible, but required under § 1122(a). If the claims are substantially similar, that implicates the gerrymandering concern, but the debtor may still separately classify them "if the debtor

1    can show a business or economic justification for doing so." *Id.* (citing *In re Bakarat*, 99

2    F.3d. at 1526).

3            Here, the bankruptcy court found that the claims of Owners Association and

4    Waste Water Company in Class 8 were substantially similar to the other unsecured

5    claims in Class 12, and therefore, they could not be separately classified. FR 160 first

6    appeals that determination under the first prong that the claims are substantially similar.

7    That determination is a finding of fact that this Court reviews for clear error. During the

8    hearing, the bankruptcy court said that "there is no evidence or at least the plan proponent

9    did not carry a burden of proving that the claims are dissimilar." (AR 11.) FR 160 argues

10   that it presented evidence showing that Owners Association and Waste Water Company

11   had another source of recovery because they could get money from Golf Club. If the

12   bankruptcy court had unequivocally held that there was "no evidence" of dissimilarity,

13   that might have been in error, but here the court restated and clarified that FR 160 "did

14   not carry a burden of proving" any dissimilarity. FR 160 presented its evidence and

15   argument about the alternative source for recovery to the bankruptcy court and Golf Club

16   presented its rebuttal. This Court finds, based on the record and the summary of those

17   arguments presented here, that the bankruptcy court did not clearly err in its factual

18   determination that FR 160 did not carry its burden.

19           FR 160 next argues that the bankruptcy court made an error by stopping at the first

20   prong of similarity. In its oral explanation of its ruling from the bench, the bankruptcy

21   court did not separately address the second prong by making findings about whether there

22   are business or economic justifications for the separate classification here. However, it

23   repeatedly referenced *Bakarat*, and this Court will not assume that the bankruptcy court

24   misapplied the legal test from that case. The proper question before this Court is whether

25   it should reverse the bankruptcy court for failing to make factual findings for each of the

26   prongs from *Bakarat*.

27           In bench trials, a court should "find the facts specially and state separately its

28   conclusions of law thereon." *Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790, 792 (9th

Cir. 1986) (quoting Fed. R. Civ. P. 52(a)); *see also In re Veal*, 450 B.R. 897, 919 (B.A.P. 9th Cir. 2011) (citing *Vance* and noting that Rule 52 applies in adversary bankruptcy proceedings by incorporation through the bankruptcy rules). The purpose is to "aid the appellate court's understanding of the basis of the trial court's decision," and that "purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Vance*, 789 F.2d at 792. The court in *Vance* held that failing to make such findings

> does not require reversal unless a full understanding of the question is not possible without the aid of separate findings. *Alpha Distributing Co. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972). We will affirm the district court if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision, or if there can be no genuine dispute about omitted findings. *Magna Weld Sales Co. v. Magna Alloys & Research Party*, 545 F.2d 668, 671 (9th Cir. 1976).

*Id.* As the Ninth Circuit reiterated more recently, even "[c]onclusory and unhelpful findings of fact do not necessarily require reversal if the record supports the district court's ultimate conclusion." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001); *see also In re Veal*, 450 B.R. at 919 (holding that appellate review may proceed based on the record as a whole even without formal findings).

There is no reason to assume error and reverse if the record as a whole and the findings the bankruptcy court did make support the ultimate conclusion. That ultimate legal conclusion here is that FR 160's separate classification fails the *Bakarat* test because the claims are similar and there is not an adequate business or economic justification to separately classify them. FR 160 argues that the Owners Association can be separately classified because it has a third-party source of recovery. It also argues that the other claims can be separated because they are nonrecurring. Golf Club argues that there can be no business or economic justification for separate classification where the plan treats both classes the same. Golf Club also argues that FR 160 is wrong to characterize them as nonrecurring because FR 160's parent and sister companies continue

1   to use those same trade debtors.

2       The bankruptcy court's ultimate conclusion is supported by the record as a whole.
3   That record shows that the judge ruled that "this plan . . . cannot be confirmed for lack of
4   a proper accepting impaired class." The judge went on to "elaborate a little bit" and
5   briefly explained from the bench the issues that were key to his decision. FR 160's
6   proposed economic and business justifications parallel its arguments that the claims are
7   not similar, and they were implicitly rejected by the court's finding under the first prong.

8       The BAP has held that there is no business or economic justification for separate
9   classification when the separately classified claims are otherwise treated the same under
10  the plan. *In re Montclair Retail Ctr., L.P.*, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995). That
11  is the case here and FR 160 fails to distinguish this case from *Montclair* or provide
12  contrary authority. Its reference to a bankruptcy court in another circuit is not controlling.
13  *In re Loop 76*, is not comparable to this case because the bank was allowed to choose its
14  treatment under the plan.

15      Here, the bankruptcy court's findings provide a basis for its decision. Further,
16  there can be no dispute that the record establishes that the separate categories were not
17  treated differently. Accordingly, no business or economic justification would have been
18  served by their separate classification. The bankruptcy court did not abuse its discretion
19  in its explicit determination under the first prong or its implicit resolution at prong two.
20  This Court finds no reversible error in the bankruptcy court's legal determination that the
21  plan failed to satisfy the test from *Bakarat*.

22  **V.   Insider Status**

23      An insider's vote to confirm the plan does not fulfill the requirement of §
24  1129(a)(10). The Bankruptcy Code provides a definition of insider that varies based on
25  the type of debtor and includes different individuals who are insiders depending on
26  whether the debtor is a person, corporation, partnership, or municipality. § 101(31).
27  However, "the respective insider definitions do not attempt or purport to be all inclusive."
28  *In re Friedman*, 126 B.R. 63, 69 (B.A.P. 9th Cir. 1991). An insider can either fall into

one of these *per se* classifications listed in the statute, or be a non-statutory insider who has a "professional or business relationship with the debtor . . . where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *Id.* at 70. A creditor-debtor relationship that includes a degree of personal interaction does not automatically become an insider relationship "so long as the parties transact their business at arm's length." *Id.*

Other courts have described various standards for identifying such non-statutory insiders. One of the cases cited by FR 160 notes that "courts generally focus on two factors: (1) the closeness of the relationship between the parties; and (2) whether the parties' transactions were conducted at arm's length." *In re Fourthstage Technologies, Inc.*, 355 B.R. 155, 159 (Bankr. D. Ariz. 2006). Another case cited by FR 160 similarly notes that "[t]he relevant inquiry is into the closeness of the relationship between the parties, and whether the transactions at issue were conducted at arm's length." *In re Greenwood Point, LP*, 445 B.R. 885, 897 (Bankr. S.D. Ind. 2011).

Here, FR 160 argues that the bankruptcy court created a unique definition for an insider within the context of § 1129(a)(10) that differs from the one used by courts when identifying insiders in other portions of the Bankruptcy Code. FR 160 argues that this is contrary to the general canon of construction that words should have the same meaning whenever they are used by Congress, and particularly so when they are used repeatedly within the same set of statutes. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir. 2002). Specifically, FR 160 argues that the bankruptcy court should have considered only the level of day-to-day control that NWRA had over FR 160, which FR 160 describes as the standard test of insider status in other parts of the Bankruptcy Code. Instead the bankruptcy court considered the control that NWRA had over FR 160 in relation to the proposal and approval of the plan, which FR 160 describes as a new test that is specific to § 1129(a)(10).

Although a repeated word in a statute is generally presumed to have the same

1    meaning, the word "insider" has been defined and interpreted in a way that takes into
2    account both the parties involved and the transactions at issue. The statutory definition
3    itself is not a one-size-fits-all definition, and it lists different insiders based on the
4    identity of the debtor as an individual, corporation, partnership, or municipality.
5    Therefore the first factor of the "relationship of the parties" is always a context-specific
6    one which considers both the identity of the debtor and the identity of the potential
7    insider. FR 160 does not contest the principle that the definition or standard for an insider
8    varies based on the identity of the parties.

9         Instead, FR 160 argues that the bankruptcy court cannot change the definition or
10   standard for an insider with respect to the second factor, the arm's length nature of the
11   transaction. FR 160 argues that the question should always be whether the parties'
12   general day-to-day dealings with each other are at arm's length. Although FR 160 cites
13   the decision of an Arkansas bankruptcy court in support of this position, *In re Armstrong*,
14   231 B.R. 746, 749–50 (Bankr. E.D. Ark. 1999), FR 160 also cites other court decisions,
15   including one by the BAP, which are not as limited. In *In re Friedman*, the BAP
16   considered "[t]he transaction that formed the basis for Friedman's preference claim" and
17   found "[t]here is no indication that the parties negotiated and executed [that transaction]
18   at anything other than arm's length." 126 B.R. at 70. The other opinions cited by FR 160
19   and quoted above also involved a consideration of control over the specific transaction at
20   issue and not only the general day-to-day control. *See In re Fourthstage Techs.*, 355 B.R.
21   at 160 ("With respect to . . . the challenged transfer" the alleged insider did not receive it
22   "because of its affinity with the Debtor."); *In re Greenwood Point*, 445 B.R. 885, 897
23   ("whether the transactions at issue were conducted at arm's length"). FR 160's similar
24   argument about the level of control that NWRA needs to have over FR 160 to constitute
25   an insider is unavailing for the same reason. The court permissibly considered the level of
26   control as to the transaction at issue rather than in general or on a day-to-day operational
27   basis.

28        Further, it is not clear that the bankruptcy court created a new standard in this

context when it stated that NWRA was "an insider, at least for purposes of 1129(a)(10)." Courts often and prudentially limit their findings and holdings to avoid deciding matters that are not before them because of "the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations." *Dewsnup v. Timm*, 502 U.S. 410, 416 (1992). In *Dewsnup*, the Supreme Court was asked to decide what "allowed secured claim" meant throughout the Bankruptcy Code, but it only determined what the phrase meant in the case before it, leaving further development and application to other parts of the Bankruptcy Code for another day. *Id.* The bankruptcy court's limiting language here is not an affirmative statement that NWRA is only an insider for purposes of § 1129(a)(10), but rather a note that the court was only deciding the issue before it.

Here, the bankruptcy court correctly considered the two primary factors for identifying insiders that have been discussed in case law: the relationship between the parties and the arm's length nature of the transaction. The court's consideration of the arm's length nature of the specific transaction at issue, the creation and approval of the plan, is consistent with *In re Friedman* and the other cases noted. Therefore, the bankruptcy court applied the correct legal standard in making its determination.

FR 160 states in its brief, that "FR 160's issue on appeal is whether the Bankruptcy Court used the correct legal standard to evaluate the facts." (Doc. 43 at 9–10.) Nevertheless, the parties both present arguments about the facts and which facts the bankruptcy court relied upon in reaching its conclusion. The only issue that FR 160 raises is whether the correct legal standard was applied and therefore the Court need not consider whether the bankruptcy court made a clear error in its factual determination.

### CONCLUSION

The parties raised four issues on appeal and cross appeal but FR 160 needed to prevail on either issue one or two to show that it had an accepting class. This court found no reversible error as to the determination that the claims were improperly separated and that NWRA was an insider. Therefore, FR 160 does not prevail on either claim one or two and the Bankruptcy Court's ruling is affirmed.

1   **IT IS HEREBY ORDERED** that FR 160's appeal from the bankruptcy court is

2   (Doc. 37) is **DENIED**.

3   **IT IS FURTHER ORDERED** that Flagstaff Ranch Golf Club's cross appeal

4   (Doc. 42) is **DISMISSED AS MOOT**.

5   **IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this

6   action.

7   Dated this 18th day of July, 2014.

8

9

10   _____

11   G. Murray Snow

12   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28